UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DAVID A. WALKER,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 2:19-CV-701-RDP |
| **ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, et al.,** | } |
| **Defendants.** | } |

## MEMORANDUM OPINION

This case is before the court on Defendant Allstate Property and Casualty Insurance Company's Motion to Dismiss and Compel Appraisal (Docs. # 39, 40), as well as Defendant CCC Information Services, Inc.'s Motion to Dismiss and Compel Appraisal (Docs. # 41, 42) and Motion to Stay Discovery Pending Resolution of CCC's Motion to Dismiss and Compel Appraisal (Docs. # 43, 44). On January 8, 2020, the court held a status conference to discuss the pending Motions. At the status conference, the court ordered additional briefing on the equitable estoppel argument raised in Plaintiff's First Amended Complaint. (Doc. # 62). Additional briefing was submitted on February 14, 2020 (Docs, # 65, 66, 67), and February 28, 2020. (Docs. # 68, 69, 70). The Motions are fully briefed and now ripe for review. (Docs. # 39, 40, 41, 42, 23, 44, 65, 66, 67, 68, 69, 70).

After careful consideration, and for the reasons discussed below, the court concludes Defendant Allstate and Defendant CCC's Motions to Dismiss (Docs. # 39, 40, 41, 42) are due to be granted. Therefore, the Motion to Stay Discovery (Docs. # 43, 44) is moot.

## I. Background[1]

Plaintiff David Walker filed a class action lawsuit against Defendant Allstate Property & Casualty Insurance Co., and Defendant CCC Information Services, Inc. (Doc. # 38). This suit arises out of a motor vehicle accident that rendered Plaintiff's vehicle a total loss. (*Id.* at ¶9). Plaintiff's vehicle was insured under a motor vehicle policy[2] issued by Defendant Allstate Property & Casualty Insurance, Co., ("Allstate"). (*Id.* at ¶ 16). To determine the actual cash value of Plaintiff's vehicle, Defendant CCC Information Services, Inc., ("CCC") provided Allstate and Plaintiff with a Market Valuation Report. (*Id.* at ¶ 22; *see* Doc. # 38, Exh. B).

The May 11, 2017, Market Valuation Report listed the actual cash value of Plaintiff's vehicle as $6,394.81. (*Id.* at ¶ 23; *see* Doc. # 1, Exh. B). In calculating this amount, the Market Valuation Report stated a base vehicle value of $6,979.00. (*Id.* at ¶¶23–24). After a $389.00 negative condition adjustment, the adjusted vehicle value was listed as $6,590.00. (*Id.*). Allstate then added Department of Motor Vehicle ("DMV") fees, added vehicular tax, and subtracted Plaintiff's $500.00 deductible. (*Id.*). Finally, the May report listed the total cash value of Plaintiff's vehicle as $6,394.81. (*Id.*).

Plaintiff disputed the accuracy of the May 2017 Market Valuation Report. (*Id.* at ¶24). In response, Plaintiff was provided with a second CCC report on June 6, 2017. (*Id.* at ¶ 24). The June report listed the actual cash value of Plaintiff's vehicle as $ 6,769.52. (*Id.* ¶¶24-27). In calculating this amount, the Market Valuation Report lists the base vehicle as $7,338.00. (*Id.*). After a $389.00 negative condition adjustment, the adjusted vehicle value was listed as $6,949.00. (*Id.*). Just as

---

[1] For purposes of ruling on Defendant's Motion to Dismiss, the court treats the factual allegations of the Complaint (Doc. # 38) as true, but not its legal conclusions. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009).

[2] Plaintiffs policy is the same standard form issued by Allstate to insureds throughout the state of Alabama. (Doc. # 38, ¶18). Plaintiff's policy number is 0455477893. (*Id.* at ¶ 16).

with the May Report, Allstate then added Department of Motor Vehicle ("DMV") fees, added vehicular tax, and subtracted Plaintiff's $500.00 deductible. (*Id.*). The June 2017 report listed the total cash value of Plaintiff's vehicle as $ 6,949.00. (*Id.*). Again, Plaintiff disputed the accuracy of the dispute. (*Id.*).

Plaintiff subsequently learned that Allstate and CCC entered into a contract to provide CCC Market Valuation Reports to Allstate insureds, like Plaintiff and the purported Class members. (*Id.* at ¶28). Plaintiff claims the CCC Reports include purported market values of total loss vehicles based upon improper and unlawful methodologies. (*Id.* at ¶29. Plaintiff also claims that Allstate has actual knowledge that the CC Methodology is statistically invalid and unlawful. (*Id.* at ¶61). Moreover, Plaintiff claims that "Allstate has suppressed and concealed material facts relating to CCC's Market Valuation System and its pre-existing scheme in conspiracy with CCC to intentionally undervalue total loss claims . . . . Specifically, Allstate concealed from Plaintiff that its purported total loss valuations were based upon the statistically invalid and unlawful CCC Valuation Methodology." (*Id.* at ¶62).

Based on the foregoing, Plaintiff filed a five-count class action complaint. Plaintiff brings this action individually and on behalf of all others similarly situated. Plaintiff defines two subclasses: (1) the "Condition Adjustment Subclass"; and (2) the "Market Valuation Subclass." (*Id.* at ¶¶96, 97). The Condition Adjustment Subclass consists of Alabama insureds whose total loss claims were reduced by negative or downward condition adjustments. (*Id.*). Whereas, the Market Valuation Subclass consists of all Alabama insureds whose vehicles received CCC reports with "Adjusted Values" which were less than the Actual Cash Value as Established by Guidebooks. (*Id.*).

Plaintiff's claims are as follows. In count one, against Allstate, Plaintiff alleges breach of contract. (*Id.* at ¶¶113–118). In count two, against CCC, plaintiff alleges tortious interference with performance with performance of a contract. (*Id.* at ¶¶119–127). In count three, against CCC, Plaintiff brings a breach of contract claim against CCC arising from Plaintiffs' status as third-party beneficiaries of the Agreement between Allstate and CCC. (*Id.* at ¶¶128–133). In count four, Plaintiff brings a bad faith claim against Allstate. Finally, Plaintiff alleges that both Allstate and CCC were engaged in an illicit civil conspiracy to provide improper total loss valuations. (*Id.* at ¶¶132-143). In count five, Plaintiff alleges civil conspiracy against Allstate and CCC. (*Id.* at ¶¶144–149). Plaintiff also requests that the court certify the class alleged in the complaint and appoint Plaintiff as Class Representative.

In response to Plaintiff Complaint, Allstate and CCC both filed Motions to Dismiss and Compel Appraisal. (Docs. # 39, 40, 41, 42). Additionally, CCC filed a Motion to Stay Discovery. (Docs. # 43, 44).

## II. Standard of Review

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Having said that, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295

(11th Cir. 2007). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

The Supreme Court has recently identified "two working principles" for a district court to use in applying the facial plausibility standard. First, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions when they are "couched as [] factual allegation[s]." *Iqbal*, 556 U.S. 679. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* The Court has also instructed that application of the facial plausibility standard involves two steps. Under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assume their veracity; and under prong two, the court must proceed to determine the claim's plausibility given the well-pleaded facts. That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.* If the district court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Id.*

## III. Analysis

The court will first address the sufficiency of Plaintiff's claims against Allstate in Count I

5

and Count IV. Next, the court will address Plaintiff's claims against CCC in Count II and Count III. Lastly, the court will address Plaintiff's claim against both Allstate and CCC in Count V.

   a. **Count I – Breach of Contract Against Allstate**

Allstate argues that the claims set forth in Count I should be dismissed pending completion of appraisal.[3] (Doc. # 40 at 7). The appraisal provision at issue provides:

> **Right to Appraisal**
> Both you and Allstate have a right to demand an appraisal of the loss. Each will appoint and pay a qualified appraiser. Other appraisal expenses will be shared equally. The two appraisers, or a judge of a court of record, will select an umpire. Each appraiser will state the actual cash value and the amount of loss. If they disagree, they will submit their differences to the umpire. A written agreement by any two of these three persons will determine the amount of the loss.

(Doc. # 40, Exh. 2, at 2). The plain terms of the policy indicate that "Plaintiff and Allstate agreed to resolve all disputes over the amount of the loss by appraisal, upon invocation by either party." (Doc. # 40 at 7). Allstate contends that the filing of this suit reflects that Plaintiff disputes the amount of loss on his total loss vehicle claim. And, because Plaintiff disputes the amount of loss, Allstate has formally invoked the appraisal process via the "Appraisal Demand Letter." (Doc. # 40, Exh. 2). Allstate claims this invocation triggered the binding appraisal process contemplated in the policy, and that "this suit must be dismissed unless and until the amount of the loss is resolved through appraisal, consistent with numerous decisions within the Eleventh Circuit." (Doc. # 40, at 8).

Plaintiff disagrees with Allstate for three reasons. First, Plaintiff argues that the appraisal provision in the policy is permissive, and not mandatory. (Doc. # 50 at 3). Second, Plaintiff argues

---

[3] Under the Federal Arbitration Act ("FAA"), appraisal provisions are regularly treated as arbitration provisions by the courts and enforced in the same manner. *See, e.g., 200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-61984-CIV, 2011 WL 2470344, at *12 (S.D. Fla. June 21, 2011) ("[a]ppraisal provisions in insurance policies . . . have generally been treated as arbitration provisions.") (internal citations and quotations omitted).

6

that under the facts of the instant case, "Allstate's delay in invoking the appraisal provision for more than two years after Allstate had knowledge that Plaintiff disputed the CCC valuation has prejudiced Plaintiff and gives rise to waiver." *Id*. Finally, Plaintiff's argue that the First Amended Class Action Complaint plausibly states claims for breach of contract, and as such should not be dismissed. *Id*. For the reasons stated below, Plaintiff's arguments necessarily fail.

As an initial matter, Eleventh Circuit precedent undercuts Plaintiff's assertions and dictates that where an insurance policy contains an appraisal provision and the amount of loss is disputed, the parties are required to obtain appraisal to determine the amount of loss prior to filing a suit against the insurer for breach of contract. *Moore v. Travelers*, 321 F. App'x 911, 913 (11th Cir. 2009) (" [U]nder the terms of the [insurance] policy, Plaintiff must first comply with the appraisal provision to determine his amount of loss. He is contractually bound to do so . . . . As no appraisal has as yet taken place to resolve this matter, Plaintiff's complaint fails to state a claim upon which relief can be granted."); *Bloomgarden v. Allstate Fire & Cas. Ins. Co.*, No. 18-62059-CIV, 2019 WL 2245475 at *2 (S.D. Fla. Mar. 15, 2019), *adopted and affirmed in part by*, Order Affirming and Adopting Report of Magistrate Judge, No. 18-62059-DGP, 2019 WL 2245475 (S.D. Fla. Aug. 6 2019).

Moreover, courts in other jurisdictions have dismissed similar claims in favor of appraisal. *Enger v. Allstate Ins. Co.*, 407 F. App'x 191, 193 (9th Cir. 2010) (dismissing breach of contract claims "[u] ntil an appraisal is completed, it is impossible to know whether [Plaintiff's] claim in fact was undervalued, such that her claims for breach of contract . . . are viable. Furthermore, because 'full compliance with the policy terms' is a contractual prerequisite to bringing suit, [Plaintiff] first must submit to the appraisal."); *Redzepagic v. CSAA Gen. Ins. Co.*, No. 2:14-CV-929-JCM-PAL, 2014 WL 4079643, at *3 (D. Nev. Aug. 18, 2014) (holding under analogous facts,

7

that plaintiff must first submit to appraisal to determine the actual cash value of his loss before plaintiff's breach of contract claims are viable.); *Marchinek v. Safeco Ins. Co. of Am.*, No. CV 17-70-BLG-SPW-TJC, 2018 WL 934631, at *4 (D. Mont. Jan. 26, 2018), *report and recommendation adopted*, No. CV 17-70-BLG-SPW, 2018 WL 934876 (D. Mont. Feb. 16, 2018) (dismissing breach of contract claims and compelling appraisal); *Shearer v. State Farm Fire & Cas. Co.*, No. CV1609469FLWLHG, 2017 WL 3611743, at *3 (D.N.J. Aug. 22, 2017) (staying case and compelling appraisal). As such, this court finds that unless and until an appraisal is completed, it is impossible for the parties or the court to know whether Plaintiff's claim was, in fact, undervalued. The court concludes these decisions are persuasive. Therefore, consistent with Eleventh Circuit precedent (and other district court decisions), Allstate's Motion to Dismiss and Compel appraisal is due to be granted.

Alternatively, Plaintiff argues that even if Allstate had the right to compel appraisal, Allstate waived that right when they unreasonably delayed invoking the appraisal provision and acted in a manner otherwise inconsistent with exercising it. (Doc. # 50 at 10). The Alabama Supreme Court has adopted the same standard for waiver of appraisal as for waiver of arbitration:

> It is well settled under Alabama law that a party may waive its right to [appraisal] a dispute if it *substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration.* Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to [appraisal]; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case.

*Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382, 387 (Ala. 2007) (internal citations and quotations omitted) (emphasis in original). Under the *Rodgers* standard, a court must determine: (1) whether the party seeking appraisal "bespeaks an intention to abandon the right" by

"substantially invok[ing] the litigation process [;]" and (2) "whether the opposing party would be prejudiced by a subsequent order requiring it to submit to [appraisal]." *Id.* "The party arguing waiver of [appraisal] bears a heavy burden of proof." *Id.* at 388 (internal citations omitted).

First, Plaintiff does not allege that Allstate has abandoned the right to appraisal by "substantially invok[ing] the litigation process." *Id.* Given that the instant litigation was commenced by Plaintiff recently, and the only responsive pleadings filed by Allstate are its Motion to Dismiss and reply briefing, the facts do not indicate that Allstate "bespeaks an intention to abandon the right" or has "substantially invoke[d] the litigation process." *Id.* at 387. For this reason alone, Plaintiff's waiver claim fails.

Second, even if Plaintiff could establish that Allstate did invoke the litigation process or abandon its rights, Plaintiff bears the heavy burden of showing that he "would be prejudiced by a subsequent order requiring [him] to submit to [appraisal]." *Id.* In *Rodgers*, the Alabama Supreme Court reiterated the standard for determining prejudice: (1) "[b]oth delay and the extent of the moving party's participation in judicial proceedings are material factors in assessing a plea of prejudice[;]" (2) "[p]rejudice has been found in situations where the party seeking [appraisal] allows the opposing party to undergo the types of litigation expenses that [appraisal] was designed to alleviate[;]" (3) "[s]ufficient prejudice to infer waiver might be found, for example, if the party seeking the stay [] [for appraisal] took advantage of judicial discovery procedures not available in [appraisal]." *Id.* (internal citations and quotations omitted). Additionally, the *Rodgers* court noted "the determination as to whether there has been a waiver must . . . be based on the particular facts of each case." *Id*.

Here, Plaintiff has not met this heavy burden. Plaintiff does not allege that he has expended "the types of litigation expenses that [appraisal] was designed to alleviate" or that Allstate "took

9

advantage of judicial discovery procedures not available in [appraisal]." Nor could Plaintiff reasonably make either of these arguments. This litigation is in its infancy—Allstate has yet to Answer Plaintiff's First Amended Complaint and the parties have started the discovery process. Rather, Plaintiff alleges that he has been prejudiced by Allstate's delay in compelling appraisal in two ways: (1) between the two year lapse between the accident and the filing of the instant suit, Plaintiff's vehicle has been salvaged and is no longer available for inspection; and (2) the appraisal provision requires the insured to pay for his own appraiser and share the expense of an umpire (if one is necessary). (Doc. # 38, ¶¶ 83-91). Considering the particular facts of the instant case, the court does not find Plaintiff's arguments compelling.

Plaintiff does not offer any legal authority for this unsupported conclusion, *i.e.*, that he has a right to "inspection-based approval." (*Id.* at ¶ 89). As there is no established "right" to an inspection-based appraisal, and Plaintiff has failed to provide the court with any legal authority for this unsupported legal conclusion, the court finds this argument unpersuasive.

Similarly, the two-year delay alleged by Plaintiff, does not, by itself, result in prejudice. Courts in numerous jurisdictions have found that waiver where a greater time has elapsed between notice and the appraisal demand, than the one at issue here. *See, e.g.*, *Rock-N-Rolls Auto Salon, Inc. v. U.S. Fid. & Guar. Co.*, No. A-6150-04T2, 2006 WL 1675699, at *2 (N.J. Super. Ct. App. Div. June 20, 2006) (trial court below compelled appraisal almost two years after filing of the complaint); *Dike v. Valley Forge Ins. Co.*, 797 F. Supp. 2d 777, 784 (S.D. Tex. 2011) (compelling appraisal where defendant insurer made initial appraisal demand four months after complaint was filed); *Caudros v. State Farm Fire and Cas. Co.*, No. 14-1247, 2014 WL 7338945, at *1 (D. Nev. Dec. 23, 2014) (compelling appraisal where defendant insurer made initial appraisal demand approximately three months after class action complaint was filed).

The court notes that Plaintiff's First Amended Complaint does not state, and subsequent briefing does not indicate, that Allstate was aware it should have demanded appraisal after Plaintiff accepted his total loss payment (presumably in June or July 2017). The instant case was filed on May 8, 2019. (Doc. # 1). On August 16, 2019, the parties filed a Joint Stipulation allowing Plaintiff to file his Fist Amended Complaint. (Doc. # 37). Plaintiff filed its First Amended Complaint on the same day. (Doc. # 38). Allstate filed its Motion to Dismiss and Compel Appraisal on the on August 30, 2019, and invoked the contractual appraisal provision via letter on the same day (Doc. # 40; Doc. # 40, Exh. 2, at 2–3). As the record indicates, Allstate merely delayed invoking the appraisal provision from the time they were aware of the action (May 8, 2019) to the day they filed their Motion to Dismiss and sent Plaintiff notice (August 30, 2019), this time period amounts to less than four months.

Finally, Plaintiff claims that Alabama's doctrine of equitable estoppel precludes Allstate from using the appraisal provision as a "weapon." (Doc. # 65 at 9). Under Alabama law, estoppel "is a principle of equity that operates not to create a right nor to impose an obligation, but to prevent an otherwise unjust result." *Nat'l Fire Ins. Co. v. Hous. Dev. Co.*, 827 F.2d 1475, 1480 (11th Cir. 1987) (quoting *Williams v. FNBC Acceptance Corp.*, 419 So. 2d 1363, 1367 (Ala. 1982)). "The purpose of the doctrine of equitable estoppel is to promote equity and justice in an individual case by preventing a party from asserting rights under a general rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience." *Pierce v. Hand, Arendall, Bedsole, Greaves & Johnston*, 678 So. 2d 765, 768 (Ala. 1996) (citing *Mazer v. Jackson Ins. Agency*, 340 So. 2d 770 (Ala. 1976)).

> The essential elements of equitable estoppel claim are:
>
> (1) knowledge of the facts by the party to be estopped; (2) intention by the party to be estopped that its conduct be acted upon, or such party acts so that the party

11

asserting estoppel has a right to believe that the conduct is so intended; (3) ignorance by the party asserting estoppel of the true facts; and (4) injurious reliance by the party asserting estoppel on the conduct.

*Id.* (quoting *Bank of Huntsville v. Witcher*, 336 So. 2d 1384, 1387 (Ala. Civ. App. 1976)). With respect to the first prong, "the conduct, language, or silence must amount to the representation or concealment of a material fact or facts." *Pierce*, 678 So. 2d at 768.

Here, Plaintiff's equitable estoppel cannot survive analysis under the first prong. Plaintiff alleges that, as part of its illicit strategy, "Allstate had actual knowledge but failed to disclose (a) that it intended to use CCC's invalid methodology to undervalue and underpay Plaintiff's total loss claims (if he had one) and (b) that is had a strategic scheme to misuse the appraisal provision by not invoking it unless and until Plaintiff or other total loss insureds filed suit." (Doc. # 65 at 11-12). Plaintiff's argument misses the mark by a wide margin.

Plaintiff's First Amended Complaint and the exhibits attached to it fail to plausibly allege that Allstate's "conduct, language, or silence [] amounts to the representation or concealment of a material fact or facts." *Pierce*, 678 So. 2d at 768. There are no allegations that Allstate mischaracterized the appraisal provision through any affirmative communication, nor that it intended to induce reliance on its silence. Rather, the First Amended Complaint and attached exhibits show that Allstate informed Plaintiff of the appraisal provision at least three times.[4] (Doc. # 38 at ¶82; Doc. # 38-5 at 3; Doc. # 38-6 at 2). Thus, Plaintiff's equitable estoppel argument is without merit.

For all of these reasons, Plaintiff has failed to carry his heavy burden.[5] Because Plaintiff

---

[4] Plaintiff admits in his First Amended Complaint that was aware of the appraisal provision. (Doc. # 38 at ¶82; Doc. # 38-5 at 3; Doc. # 38-6 at 2). Plaintiff even went so far as to invoke the appraisal provision, but later rescinded his invocation. (Doc. # 38-6 at 2)

[5] Plaintiff also argues that the doctrine of implied waiver or "laches" applies. However, Plaintiff has not explained why, or how, implied waiver applies in this case. (Doc. # 50 at 11-12). The case law cited in support of this argument

has failed to allege facts establishing that Allstate waived its right to compel appraisal. Allstate's Motion to Dismiss and Compel Appraisal is due to be granted.

### b. Count IV- Bad Faith Claim Against Allstate

As the Alabama Supreme court has repeatedly held:

> [T]he tort of bad-faith refusal to pay a claim has four elements—(a) a breach of insurance contract, (b) the refusal to pay claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence—with a conditional fifth element: (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim. Thus, for the tort of bad-faith refusal to pay, "[r]equirements (a) through (d) represent the 'normal' case. Requirement (e) represents the 'abnormal' case." But the tort has always been *one*.

*State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013) (internal citations and punctuation omitted). As outlined by the *Brechbill* court, the tort of bad faith has two different options for proof: (1) proof of a "normal" bad faith claim; or (2) proof of an "abnormal" bad faith claim. A "normal" case is also referred to as bad-faith refusal to pay, while an "abnormal" case is known as bad-faith refusal to investigate. The Plaintiff alleging the tort of bad faith bears the burden of establishing each element of the claim. *Shelter Mutual Ins. Co. v. Barton*, 822 So. 2d 1149, 1154 (Ala. 2001) (citations omitted) ("The Plaintiff asserting a bad-faith claim bears a heavy burden.")

Here, Plaintiff's bad-faith action is foreclosed by the prematurity of his breach of contract claim. *See Quick v. State Farm Mut. Auto. Ins. Co.*, 429 So. 2d 1033, 1035 (Ala. 1983) (finding "there can be no breach of a[] [] contract, and therefore no bad faith, until the insured proves that he is legally entitled to recover."). As previously discussed, Plaintiff's breach of contract claim is not proper until an appraisal is completed. Without a viable breach of contract claim, Plaintiff

---

does not concern appraisal, and in most of the cases the court did not find that implied waiver was applicable. (*Id.*). The court finds this argument unpersuasive.

cannot maintain his claim for bad faith denial of a contract. As such, Plaintiff's bad faith claim is due to be dismissed.

### c. Count II- Tortious Interference with Performance of a Contract Against CCC

To successfully state a claim for tortious interference with a contract, a plaintiff must allege: "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *Walter Energy, Inc. v. Audley Capital Advisors LLP*, 176 So. 3d 821, 828 (Ala. 2015).

Here, Plaintiff's claim fails because he prematurely assumes that he was damaged by the CCC market valuation reports. As previously discussed, Plaintiff will not know if his claim for breach of contract is proper until the appraisal process is completed. The same rationale preempts Plaintiff's claim for tortious interference with performance of a contract. Plaintiff received payment for his salvaged vehicle and until the appraisal is complete, he will not know if he was underpaid.

Moreover, even if the court assumes Plaintiff was damaged by the CCC market valuation reports, Plaintiff fails to allege that CCC intentionally interfered with the Policy. Rather, Plaintiff alleges that CCC provided Allstate with inaccurate market valuation reports for the specific purpose of enabling Allstate to underpay total-loss claims. However, "enabling" Allstate to use the market valuation reports is not the same as CCC intentionally interfering with the Policy. In addition, Plaintiff does allege that CCC prevented Allstate from complying with the policy. Plaintiff received payment for his salvaged vehicle. As such, Plaintiff's claim for tortious interference is improper and due to be dismissed.

### d. Count III - Breach of Contract Claim Against CCC

Plaintiff alleges that he is the third-party beneficiary of a contract between CCC and Allstate and that CCC breached that contract to Plaintiff's detriment. "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Financial Corp.,* 29 So.3d 872, 880 (Ala.2009) (quoting *Reynolds Metals Co. v. Hill,* 825 So.2d 100, 105 (Ala.2002)). A party claiming to be a third-party beneficiary, "must establish that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon the third party." *Airlines Reporting Corp. v. Higginbotham*, 643 So. 2d 952, 954 (Ala. 1994). Here, Plaintiff's claim fails for multiple reasons. The most obvious of which is that Plaintiff has failed to plead his third-party beneficiary status. A plaintiff must allege "facts in the complaint suggesting that either party to the [contract] intended it to directly benefit him at they time they executed the [contract]." *Thomas v. Am.'s Servicing Co.*, No. 2:15-CV-00019-AKK, 2015 WL 4729792, at *2 (N.D. Ala. Aug. 10, 2015). Plaintiff merely alleges that "Allstate contract with CCC to receive" market valuation reports from CCC and that "Plaintiff and the class are intended beneficiaries of the agreement between Allstate and CCC." (Doc. # 38, ¶¶ 56, 130). While Plaintiff made conclusory allegations suggesting that he was intended to directly benefit from the contract between CCC and Allstate, no facts in the complaint suggest that Allstate or CCC intended Plaintiff to directly benefit at the time they executed their agreement. *See Thomas*, 2015 WL 4729792, at *2. As Plaintiff failed plead his third-party beneficiary status, his claim for breach of contract against CCC is due to be dismissed.

### e. Count V – Civil Conspiracy Against Allstate and CCC

Finally, Plaintiff alleges that Allstate and CCC entered into an illicit agreement and conspiracy to utilize CCC valuations to provide improper total loss valuations." (Doc. # 36, ¶117). Under Alabama law, "[c]ivil conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *Hooper v. Columbus Reg'l Healthcare Sys., Inc.*, 956 So. 2d 1135, 1141 (Ala. 2006). "Th[e] [Alabama Supreme Court] has stated that a conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy but the underlying wrong that was allegedly committed. If the underlying cause of action is not viable, the conspiracy claim must also fail." *Allied Supply Co. v. Brown*, 585 So. 2d 33, 36 (Ala. 1991).

Plaintiff's underlying claims against CCC and Allstate are not viable. Because Plaintiff's claims for breach of contract, tortious interference with a contract, and bad faith do not pass muster, Plaintiff's claim for civil conspiracy necessarily fails. As such, Plaintiff's civil conspiracy claims against Allstate and CCC are due to be dismissed.

### IV. Conclusion

After careful consideration, the court concludes Defendants Allstate and CCC's Motions to Dismiss (Docs. # 39, 40, 41, 42) are **GRANTED**. Plaintiff's Motion to Stay Discovery (Docs. # 43, 44) is **MOOT**. An Order will be entered contemporaneously.

**DONE** and **ORDERED** this March 10, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE